144 So. 591

**VASQUEZ v. ROMANO et al.**

No. 31530.

Oct. 31, 1932.

Rehearing Denied Nov. 28, 1932.

K. V. Richard and George B. Smart, both of New Orleans, for appellant.

Monroe & Lemann and Watts K. Leverich, all of New Orleans, for appellees.

LAND, J.

During the year 1924, petitioner entered into a copartnership with Ralph Romano to erect buildings in the city of New Orleans. This partnership terminated about the end of that year.

On July 3, 1925, petitioner filed suit for the dissolution and settlement of the partnership, but this suit was dismissed as of nonsuit August 5, 1925.

On October 11, 1926, petitioner renewed his demands against Romano, and on October 20, 1930, obtained judgment against him in the sum of $4,902.71, with legal interest from judicial demand until paid and all costs.

Between August 16 and December 15, 1928, Romano transferred to his sister, Josephine Romano Morrissey, five parcels of real estate in the parish of Orleans, and two parcels in the parish of East Baton Rouge, and on August 18, 1928, granted a mortgage for $19,-602.72 to his sister's husband, Thomas M. Morrissey, on one of the East Baton Rouge parish properties.

The present suit was filed by Vasquez against Ralph Romano, Josephine Romano Morrissey, and Thomas M. Morrissey to have these transactions declared simulated, and, in the alternative, fraudulent as illegal preferences given by Romano to Josephine Romano Morrissey and to her husband, and to have the properties involved subjected to execution to satisfy plaintiff's judgment, as Romano, as

alleged by plaintiff, had no other property upon which execution could be made.

Since all three of the defendants are non-residents, plaintiff discontinued the suit against the East Baton Rouge properties, as the civil district court for the parish of Orleans had no jurisdiction over these properties.

On the other hand, defendants contend that the sales were legal, that the consideration was adequate, and actually passed to the vendor, Romano. Defendants further contend that Romano was not insolvent at the time these transactions were made, nor at the time of the filing of this suit, nor at the time of the trial in the lower court; that no fraudulent preference was given by him to his sister or to her husband; and that no injury resulted to plaintiff, the complaining creditor, from any of these transactions.

On these issues, the case went to trial in the lower court, and judgment was rendered in favor of defendants, rejecting plaintiff's demands at his cost.

From this judgment plaintiff has appealed.

■ The charge of plaintiff that the transfers and mortgages made by Romano to Mrs. Morrissey and to Thomas M. Morrissey were pure simulations, made for the purpose of defrauding plaintiff, is not sustained by the evidence in the case.

The defendant Ralph Romano was stricken with paralysis in the city of New Orleans on April 9, 1926, as stated in a notarial power of attorney of date April 14, 1926, executed by him in favor of his wife.

His sister, Mrs. Morrissey, came immediately to his bedside from her home in Vicksburg, Miss., and, at his request, took him to her home, where he remained practically for three years, except for short visits to Memphis and New Orleans to consult his physicians; and, while in New Orleans, he made three wills, in 1926, one in 1927, and still another in 1928.

While at his sister's home in Vicksburg, he was urged by her to go to a sanitarium, but he refused to do so, and made a verbal agreement with her in 1926 that he would pay her $150 a month for his room and board, and $25 a month for the board of his nurse, as he was an invalid at the time.

When his sister started to take care of him, he agreed to pay her out of any property he might own, as he was expecting to sell some of it, and when he could not dispose of it, the only way he had to pay her was to transfer the property to her, and credit the purchase price on the advances which had been made to him by his sister.

The uncontradicted testimony of Mrs. Morrissey is to the effect that she had about $1,200 a month coming from commercial properties owned by her in Vicksburg, and that her husband, Thomas Morrissey, gave her $500 a month, and paid the household expenses.

The cash consideration recited in the various acts of sale in July and August, 1928, made by Romano to Mrs. Morrissey, as appears in paragraph IV, a, b, c, d, e, f, and in paragraph V of plaintiff's petition, amounts to $16,892.28.

From the original memoranda made by Mrs. Morrissey at the time and submitted to Romano, she had advanced him not less than

$18,626.91, during the years 1926, 1927, and 1928.

From the statements annexed to the deposition of Romano and made up by Mrs. Morrissey's auditor, at the time of the filing of this suit, from canceled checks and receipts, and from the memoranda of Mrs. Morrissey, she had advanced him not less than $19,546.11 during these years.

And from receipts and canceled checks identified by Mrs. Morrissey and filed in the record, plus the agreed charges for board and lodging for Romano and his nurses, the amount due by Romano to Mrs. Morrissey for these years, 1926, 1927, and 1928, was $22,390.33.

Making allowances for amounts advanced after the date of the transfers and mortgages sought to be set aside, which took place in July and August, 1928, by deducting, say, one-fourth of the advances for the year 1928, we would have totals, approximately, as follows:

|  | Memo. | A/C | Receipt on Canceled Check. |
|---|---|---|---|
| 1926 | $2,216.60 | $2,238.60 | $2,257.10 |
| 1927 | 2,101.07 | 2,120.26 | 2,120.26 |
| ¾—1928 | 10,731.93 | 11,390.30 | 16,792.75 |
|  | $15,049.60 | $15,749.16 | $21,170.11 |

It is evident, from the size of the monthly income of Mrs. Morrissey, that she had sufficient funds to make the above advances to Romano during his three years' stay at her home in Vicksburg, and the fact that she did make these advances is established by her testimony, and by that of Romano, and by the receipts and canceled checks filed in the rec-

ord in this case. That Romano was in the home of his sister at Vicksburg, an invalid practically for three years, and attended continuously by nurses, is shown by the testimony of Mrs. Morrissey, of her husband, Thomas M. Morrissey, of J. L. Garvey, secretary of Thomas M. Morrissey, of Mrs. Katherine Sillinger, a neighbor of Mrs. Morrissey and a frequent visitor, and of Romano himself.

Mrs. Morrissey does not pretend that she paid any cash consideration for any of these sales, but that the purchase price was credited on the advances made by her to her brother, in pursuance of an agreement with him to that effect. As the cash consideration, or amount credited on the advances made by Mrs. Morrissey to Romano, amounts to an aggregate sum of $16,892.28, it is evident that a valuable consideration was paid for the properties conveyed to her by her brother in July and August, 1928, and that the transactions attacked herein by plaintiff were not fraudulent simulations.

Plaintiff does not attempt to dispute any item or items in the statements of advances made by Mrs. Morrissey to her brother, but contends that Romano was at his home in New Orleans during the year 1926, looking after his business, although partially paralyzed; that he was in the city of New Orleans attending to his affairs during the whole of 1927, except a few visits to his sister in Vicksburg; and that he was in the city of New Orleans in January and February up to March 20 or 21, 1928.

In other words, plaintiff contends that the account which Mrs. Morrissey has presented against her brother is largely a fabrication, and, in order to establish this fact, produced

James Henderson and his wife; William Gahagen and his wife; and John M. Schulz, Jr., the keeper of an oil station and grocery. These witnesses lived in the neighborhood in which Romano resided.

All of these witnesses state that, since Romano had the stroke, his wife had taken over the business in conjunction with Little, a former foreman of Romano, in the building business. The stroke occurred April 9, 1926. Consequently, after that date, Romano was not *attending to his business* as usual during the years 1926, 1927, and 1928. His incapacity to attend to any business was solemnly declared on *April 14, 1926*, in a notarial act of power of attorney executed by him in favor of his wife, in which he declared that "he suffered a stroke of apoplexy which deprived him of the use of his right hand since *Friday, April 9, 1926*."

On *July 13, 1926*, Romano was examined by Dr. Rudolph Matas, whose diagnosis was "that the patient was suffering from right side hemiplegia, meaning paralysis of half of the body caused by hemorrhage in the brain, chronic interstitial nephritis, chronic Bright's Disease, with arteriosclerosis, hardening of the arteries, and excessive blood pressure, complicated by diabetes. Sugar in urine very considerable. Twice as much sugar in the blood as he should have normally. Those are the facts."

At that date, July 13, 1926, his physician pronounced Romano as "an extremely ill man, a permanently damaged man," who could not do "any physical work of any sort," and who was not fit to be "right on the scene of action," giving orders and directing work. Such was the condition of Romano, three months after the stroke of paralysis, and,

even if the witnesses relied upon by plaintiff had testified that they saw him each day after the stroke attending to his business, such testimony would be utterly discredited by the physical condition itself of Romano at the time.

The testimony of plaintiff's witnesses, James Henderson and wife, relates clearly to their seeing Romano nearly every day at work, before he was paralyzed on April 9, 1926.

When plaintiff's witness Mrs. William Gahagan was asked: "Well, do you remember whether, in 1926 or 1927, he was about his work, attending to his work?" she replied: "No, sir, I could not say. I don't remember dates at all."

Witness swore that she was present when Mrs. Morrissey got a lawyer to make Romano's will; that the husband of witness was a witness to the will; *that Romano's wife left him after the will was made;* and that Romano left New Orleans two or three weeks after that.

William Gahagan, plaintiff's witness, testified that he was a witness to Romano's will; that Mrs. Morrissey was present with an attorney when the will was made; that at the time Romano was paralyzed on one side, and had been in that condition about *a year, or a year and a half or two years.*

Mrs. Morrissey testified that Romano came to Vicksburg the last part of February, 1928, remained there a week or two and returned to New Orleans, and, after he was in the city a few days, that *his wife deserted him.* Necessarily, this was in *March, 1928, and on March 20, 1928, one of Romano's wills was made by Ernest J. Robin, notary.*

So, the testimony of Gahagan and his wife relates not to the year 1926, or the year 1927, but exclusively to the year 1928. Gahagan's testimony, that Romano, during this period, was at Baton Rouge several times a week looking after his business there, is not supported by the testimony of his wife, nor by that of any other witness. A man who has been paralyzed for two years, and who, even at that late date, is confined to his home and is calling in his neighbors to witness his last will and testament, does not present to our minds the picture of a man in such normal state of health that he is able to visit a distant town several times a week to look after his own affairs.

Plaintiff's witness John M. Schulz, Jr., makes Romano fall ill *in 1928* when, as a fact, he was paralyzed *April* 9, 1926, and also makes Mrs. Morrissey take him away to Vicksburg about three weeks *after he was taken sick in 1928.*

Five years had elapsed at the time this witness testified and, evidently, he was confused as to dates. Romano was paralyzed April 9, 1926, as already stated, and Mrs. Morrissey testified that she took him to Vicksburg about May 1, 1926, or about three weeks after he became sick.

Although Schulz testifies that he saw Romano nearly every day at witness' filling station, he states positively that, after Romano became sick (April 9, 1926) he stayed at home, was paralyzed, didn't go out much, and that a man by the name of Little attended to his business.

The fact that the witness may have seen Romano frequently before he got sick is of no importance. It is certain that the witness knew that Romano left for Vicksburg with his sister about three weeks after he became sick, or about May 1, 1926, as she testifies, and his testimony that he saw Romano nearly every day in 1926, 1927, and 1928 is not only contradicted by the witness' own testimony but is flatly denied by Romano himself, Mrs. Morrissey, Thomas M. Morrissey, J. L. Garvey, and Mrs. Katherine Sillinger, who testified that Romano was at the home of his sister in Vicksburg for practically three years from May 1, 1926.

Such is the fair preponderance of the testimony in the case, and it must prevail, especially as the trial judge has accepted the testimony of defendants and their witnesses as credible and trustworthy.

Our conclusion, therefore, is that Mrs. Morrissey actually made to Romano the advances claimed by her, and that legal and valuable considerations were paid for the transfers to Mrs. Morrissey by Romano in July and August, 1928, of the properties involved in this case. There is no proof of fraudulent simulation, as alleged by plaintiff.

2. In the alternative, plaintiff's action is revocatory in character.

The law gives to every creditor an action to annul any contract made in fraud of his rights. Rev. Civ. Code, art. 1970.

"This action can be only exercised when the debtor has not property sufficient to pay the debt of the complaining creditor, or of all his creditors where there has been a cession, or any proceeding analogous thereto." Rev. Civ. Code, art. 1971.

"Every contract shall be deemed to have been made in fraud of creditors, when the obligee knew that the obligor was in insolvent circumstances, and when such contract gives

to the obligee, if he be a creditor, any advantage over other creditors of the obligor." Rev. Civ. Code, art. 1984.

In a revocatory action it is necessary, therefore, that the complaining creditor should allege and prove that the vendor was his debtor, that he was insolvent, that his insolvency was known to the purchaser, and that the intention and effect of the fraudulent sale were to injure plaintiff, in preventing the recovery of his just claim. Hart & Co. v. Bowie, 34 La. Ann. 323; Seixas v. Citizens' Bank, 38 La. Ann. 424.

In our opinion, the evidence adduced by plaintiff fails to show that Romano was insolvent at the date of the transfers made by him to Mrs. Morrissey in July and August, 1928, or at the date of the filing of the suit, October 11, 1926, or at the date of the trial of the case, June 4, 1931.

At the time of these sales, Romano owned real estate in Vicksburg, valued at from $17,-500 to $20,000, and a Packard car, valued at $4,800, diamonds valued at $2,000, and household furniture valued at $2,500. Tr. 42, 183, and deposition of Jacob Hirsch of Messrs. Hirsch, Dent, and Landau, attorneys of Vicksburg. Tr. 184.

At the time of the trial, he owned real estate in Vicksburg, and this property, at the time the suit was filed, was valued at about $17,500, and the net equity of Romano therein at $13,000. Tr. 183, and deposition of Mr. Hirsch.

Plaintiff's judgment is for $4,902.71.

Mrs. Morrissey did not know that Romano was insolvent, if he were so in fact, and the evidence shows that he was not. Tr. 174, 175.

She was not acquainted with Vasquez, plaintiff in this suit, at all, and had had no communication with Romano for fifteen or sixteen years before he was stricken. Tr. 195, 196-198.

Plaintiff has not shown any debt, except his own, due by Romano, and plaintiff's debt, claimed in liquidation of a partnership, could not have existed in fact until judgment was rendered, October 24, 1930, more than two years after the transactions now sought to be set aside. Nor has plaintiff shown that Romano was insolvent at the time of these transactions; consequently, these sales and mortgage gave no advantages to the obligee, Mrs. Morrissey, over other creditors of Romano, or over plaintiff in particular.

A misleading statement is made by plaintiff at the top of page 2 of his brief, that between August 16 and December 15, 1928, Romano transferred to his sister all his property in New Orleans and Baton Rouge for $55,-500, and granted a mortgage on August 18, 1928, to Mr. Morrissey on one of the Baton Rouge properties for $19,602.72, making a total of over $75,000.

Romano did not give away $75,000 worth of property for nothing, as the above statement, without qualification, might have had the court infer.

The properties in New Orleans, with the exception of the Weiblen property, were all burdened with mortgages, and the net equity over and above these mortgages, which represented the consideration paid by Mrs. Morrissey to Romano, amounted to $9,500; the equity of Romano in the Tulip street property in Baton Rouge to $2,000; and his equity in the other piece of Baton Rouge property, on which Mr. Morrissey held a valid first mortgage, to $5,392.28; or a total equity of

Romano in all of the properties of $16,892.28, and not $75,000.

In December, 1926, Morrissey took up notes of Romano secured by mortgage on the Valley House, Baton Rouge, amounting to $6,642.72; and on March 25, 1927, he took up a note of Romano, secured by a deed of trust on the debtor's Vicksburg property for $12,960, and took a mortgage for the entire debt, $19,602.72 on the Valley House, Baton Rouge.

Even if plaintiff's judgment should be considered as a claim in 1928, when the transfers were made, adding to it ($4,902.71), the total possible maximum amount of claims of Mrs. Morrissey up to the date of the transfers, $21,170.11, there would be a total of outstanding claims of $26,072.82. As against this amount, exclusive of personal property valued at $9,300, Romano owned, at the time, real property in New Orleans, Baton Rouge, and Vicksburg, valued at least at $29,892.28; the total equity in the New Orleans and Baton Rouge property being $16,892.28, and in the Vicksburg property at least $13,000, as testified to by Mr. Hirsch. Romano was clearly solvent.

Judgment affirmed.